KNOWLES D. WHITE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RALPH M. WALKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70767, 70768. Promulgated April 24, 1936.

*A. W. Clapp, Esq.*, for the petitioners.
*O. W. Swecker, Esq.*, for the respondent.

OPINION.

BLACK: These proceedings, which have been consolidated, are for the redetermination of deficiencies in income tax for 1930 in the respective amounts of $631.23 and $875.91. The only question presented for our determination is whether the respondent erred in adding to the partnership income reported by the petitioners for the taxable year their proportionate shares of the sum of $16,134.02, which amount was treated by the respondent as an increase in the partnership income growing out of a transaction by which, in pursuance of an agreement entered into in 1927 by the partnership and its creditors, the partnership was permitted to take as a credit in 1930, on a note which it had executed in behalf of its creditors, interest payments made during the years 1923 to 1926, inclusive, amounting to $16,134.02.

A separate stipulation of facts was filed in each proceeding. These stipulations are identical except as they relate to a segregation of each partner's share in the alleged income. No oral testimony was received at the hearing and no separate findings of fact are necessary. Such parts of the stipulations as seem necessary to an understanding of the issue to be decided, follow:

The petitioners, Knowles D. White and Ralph M. Walker were members of the partnership, known as the Walker Electrical Company, Columbus, Georgia, and they shared profits and losses in the ratios of 100/363 and 263/363, respectively. The said partnership was a successor to a partnership known as Walker Electric & Plumbing Company, which partnership had been composed of the petitioner, Ralph M. Walker, D. T. Beggs and S. S. Dean. In 1923, and before executing the agreement hereinafter set forth D. T. Beggs withdrew from the partnership. At the time of his withdrawal he was released from all liability as to the partnership debts and in turn received no part of the partnership assets. In 1925 S. S. Dean died. S. S. Dean's estate was also released from all liability as to the partnership debts and in turn received no part of the partnership assets.

In 1923, the affairs of Walker Electric & Plumbing Company had become substantially involved and the partnership was unable to pay its creditors in full. On May 16, 1923, the creditors of Walker Electric & Plumbing Company

entered into an agreement with Walker Electric & Plumbing Company, under the terms of which a creditor's committee was appointed, composed of E. R. Black, who was at that time President of Atlanta Trust Company, and H. E. West, with the General Electric Company. The bank creditors, under the terms of this agreement, advanced $20,000.00 to provide working capital for needs of the business, and the commercial creditors agreed to continue to furnish goods as needed for the carrying out of contracts present and future, and all amounts then due to all creditors who were parties to the agreement were extended to January 1, 1924, in the form of notes bearing interest at six per cent. A few minor creditors were paid off in cash. It was agreed that after the banks had been paid for the money advanced, and the creditors paid for materials subsequently furnished, that any excess funds accruing to the partnership should be paid pro rata to the banks and commercial creditors.

At subsequent meetings of the creditors' Committee, at which the creditors, or their representatives, were also present, this agreement was extended from time to time, and was still in effect in 1927.

Early in 1927, Walker Electric & Plumbing Company began negotiations to get the creditors to discontinue the requirement that interest be paid.

The creditors did agree to discontinue interest as of February 1, 1927, and at that time one note was given to Atlanta Trust Company, as trustee, for all creditors, covering the entire indebtedness which had been deferred, which note was payable on demand and non-interest bearing.

During the year 1927, after negotiation the creditors revised their agreement with the partnership, Walker Electric & Plumbing Company, so that, when the total payments made subsequent to that date together with the principal and interest payments made prior to 1927, equalled the face value of the notes payable, the creditors would cancel the unpaid balance of the said notes. In other words, the creditors agreed that, upon the payment by the partnership of an additional sum which when added to the principal and interest already paid would equal the principal of the notes, they would apply the interest paid from 1923 to 1927 as payments on the notes.

At the time that the creditors were requested to discontinue the collection of interest, the creditors, in a meeting of March 15, 1927, passed a resolution in respect of which the facts are recited in the minutes, as follows:

"After discussion of the interest charge already paid by the Company on its deferred indebtedness, and action by the Government in connection with their claim for taxes for the years 1918, 1919 and 1920, we being given to understand the Government is willing to compromise for a small payment provided they are given assurance that by such action, and as a result of further consideration by the deferred creditors, the Walker Company will be able to work out of its difficulties; the following resolution was unanimously adopted:

"Resolved that there be no further interest from February 1st, 1927, charged to deferred indebtedness and that the Merchandise Creditors endeavor to credit the Walker Company indebtedness with the back interest received on deferred indebtedness to the principal of the indebtedness, and that report be made by each creditor upon this question."

The taxes referred to in said resolution were, in fact, compromised with the Government in October, 1927.

On December 31, 1927, the partnership debts amounted to $216,699.57, and its assets amounted to $206,615.08.

Walker Electric & Plumbing Company continued to make payments to its creditors until the close of 1929, and at December 31, 1929, owed, on the basis of the 1927 agreement, the various commercial creditors $5.00 each. These

balances were paid during the year 1930. At the time the final payments were made the creditors returned the partnership note marked paid. At this time the difference between the face of the note and the total payments made amounted to $16,134.02. Upon receipt of the said note the partnership debited its notes payable account with the item of $16,134.02 and credited the investment account of its members for their proportionate amount of unpaid balance, namely $16,134.02.

\* \* \* \* \* \* \*

The interest payments made by the partnership on the notes during the years 1923 to 1926 inclusive were claimed and allowed as expense deductions in the partnership income tax returns filed for the said years.

During the year 1927 the partnership, Walker Electric & Plumbing Company, earned in excess of $25,000.00; for 1928 it earned approximately $68,000.00; for 1929 the Walker Electrical Company's return, which was accepted by the Commissioner as rendered, disclosed a net income of $133,717.97, and for the year 1930 the partnership income amounted to approximately $75,000.00 after eliminating the item of $16,134.02 here in controversy. All of the foregoing profits are before deducting salaries to the partners.

The partnership Walker Electric & Plumbing Company had sustained losses of $43,033.22 in 1923, $56,519.68 in 1924 and $37,773.02 in 1925 and had earned $20,712.86 in 1926.

From 1923 to 1927 the payments on principal to the commercial creditors amounted to $9,743.30.

The returns of Walker Electric & Plumbing Company and Walker Electrical Company were filed on the accrual basis.

The balance sheet of the partnership which was attached to the stipulations shows that its net worth at December 31, 1929, was $84,881.25.

The interest payments made by the partnership on its indebtedness during the years 1923 to 1926, inclusive, were claimed and allowed as expense deductions in the partnership income tax returns filed for those years. That being so, it seems clear that if these interest payments had been refunded to the partnership in cash in 1930, such refunds would have been income to the partnership for 1930. Cf. *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Askin & Marine Co.* v. *Commissioner*, 66 Fed. (2d) 776; *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. But such refunds of interest to petitioner were not made in cash in 1930. They were made, however, in the equivalent of cash by the partnership creditors allowing the partnership to use as a credit on the principal of its indebtedness the $16,134.02 in question. Cf. *Albert J. Sullivan*, 16 B. T. A. 1347; *Stevenson Consolidated Oil Co.*, 23 B. T. A. 610. In the latter case we said:

Both petitioner and respondent are in agreement that this exchange of stock for assumption and agreement to pay liabilities was a taxable transaction. Both treat it as a transaction in which the petitioner received a complete acquittance from its creditors of $220,055.85 indebtedness and by which thereafter the Sunburst Oil and Refining Company became substituted as

a debtor to the creditors for $220,055.85 instead of petitioner. In this state of facts, petitioner's acquittance of $220,055.85 of its indebtedness to creditors became to it the same as cash received in that amount for the 250,000 shares of stock which it transferred to the Sunburst Oil and Refining Company.

In the instant case there was no substitution of debtors such as there was in the above cited case, but there was a complete acquittance of $16,134.02 of the partnership indebtedness by the creditors.

Petitioners contend that forgiveness of indebtedness does not result in taxable income, and in support of their contention cite *Meyer Jewelry Co.*, 3 B. T. A. 1319; *John F. Campbell Co.*, 15 B. T. A. 458; affd., *Burnet* v. *Campbell Co.*, 50 Fed. (2d) 487; *Eastside Manufacturing Co.*, 18 B. T. A. 461; *Progress Paper Co.*, 20 B. T. A. 234; *E. B. Higley & Co.*, 25 B. T. A. 127; *Simmons Gin Co.*, 16 B. T. A. 793; affd., 43 Fed. (2d) 327; and *Towers & Sullivan Manufacturing Co.*, 25 B. T. A. 922.

In all the above cited cases it will be noted that the taxpayers were insolvent during the year in which they received the benefit of the composition settlement. In the *Meyer Jewelry Co.* case we pointed out that "the evidence shows it could not have in fact paid whether voluntarily relieved of payment or not." Likewise, in the appeal of *E. B. Higley & Co., supra,* we said:

It has heretofore been held that foregiveness of indebtedness does not result in income * * *. In this proceeding and in the decisions cited above, the forgiven debtor was insolvent. The debt was forgiven so that the business might be rehabilitated and continued as a going concern. The parties contemplated no profit from the transactions, which merely relieved the taxpayer from a portion of its liabilities.

In cases where the facts disclosed the taxpayer was solvent the forgiven debt has been included in taxable income. *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393. In our decision in that case we said:

Why was this not an accession of income in plain, popular terms, whether a forgiveness of indebtedness or a revision of the original contract? While in a sense it was a return of expenditures made in purchasing its machinery and producing and selling its merchandise, still these expenditures were made in conducting its business for the purpose of making profits. The use of fixed accounting periods requires that the amount by which expenses, once deducted, because paid or accrued, are reduced by later adjustments must be taken into income in the year of the adjustment. Only in this way can the amount of the taxpayer's reported income be made to agree with its actual income.

We think the instant case falls within the rule of *B. F. Avery & Sons, Inc., supra.*

It was in the year 1930, which is before us, that the partnership took into account the $16,134.02 in question. The stipulation shows that in 1930 the partnership was entirely solvent. It had assets largely in excess of all of its liabilities and had a net income of approximately $75,000, exclusive of the $16,134.02 in controversy.

In the case of *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, the Supreme Court said:

    * * * Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct. * * * The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here.

The forgiveness of indebtedness or adjustment of indebtedness, or refund of interest previously paid, whichever it may be called, did not take place in 1927. The agreement was that upon the payment by the partnership of additional amounts which, when added to the principal and interest already paid, would equal the principal of the notes, the creditors would apply the interest paid from 1923 to 1926, inclusive, as payments on the notes.

This event took place in 1930 and for reasons already stated we think the $16,134.02 in question was income to the partnership in that year. We sustain the determination of respondent.

Reviewed by the Board.

*Decision will be entered for respondent.*

———

McMAHON, concurring: It is, in effect, found by the majority that the stipulated facts show that in 1930 the partnership discharged its obligations by the giving of consideration in an amount of $16,134.02 less than the face of such obligations, through the crediting by the creditors of that amount of interest, paid previous to 1930, in satisfaction of the indebtedness to that extent existing in 1930; and that the partnership was solvent in 1930. The question of law presented by such factual situation is whether taxable income was derived in 1930 as a result of the discharge of indebtedness in that amount.

In *Helvering* v. *American Chicle Co.*, 291 U. S. 426, the Supreme Court held that where a corporation in 1914 purchased all the assets of another company and in part payment therefor assumed certain bonds of such other company and in 1922 retired some of the assumed bonds for less than their face value, the difference between the retirement price and the face value constituted taxable income to the corporation in 1922. The Supreme Court there stated in part:

The case before us is this:

    In connection with the purchase of the assets of another company in 1914, respondent assumed—promised to pay—more than $2,000,000 of the seller's outstanding bonds. During 1922, 1924 and 1925 it purchased a considerable number of these bonds in the market at less than their face. The Commissioner assessed the difference between these two amounts as income.

We find nothing to distinguish this cause in principle from *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 52 S. Ct. 4, 76 L. Ed. 131. The doctrine there

announced is controlling here. *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886, is not applicable. The final outcome of the dealings was revealed—the taxpayer suffered a loss. Here, for aught we know, there was substantial profit—certainly, the record does not show the contrary. Doubtless, respondent's books indicated a decrease of liabilities with corresponding increase of net assets.

The Supreme Court thus held in the *American Chicle Co.* case, notwithstanding that in the *Kirby* case, referred to in the above quotation, the taxpayer discharged its own obligations which had been issued at par for cash; and in the latter case the Supreme Court stated:

\* \* \* As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct. We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here. \* \* \*

See *Twin Ports Bridge Co.*, 27 B. T. A. 346.

Section 213 of the Revenue Act of 1926 defines "gross income" to include, among other things, "or gains or profits and income derived from any source whatever"; and the Supreme Court, in the *American Chicle Co.*, in effect, and in the *Kirby* case expressly, defined this very phraseology to include the difference between the face of fixed obligations of a taxpayer and the amount below that at which such obligations are discharged, there being there, as here, no showing that such difference did not result in taxable gain. The instant proceeding is governed by the *American Chicle Co.* case and the *Kirby* case. Here, as in those cases, it appears that the petitioner discharged its obligations at less than face, resulting in taxable income to it; and there is here no showing to the contrary.

As pointed out herein, the stipulated facts show that in 1930 the partnership was solvent. Its assets exceeded its liabilities and it had a large net income. As stated in *Commissioner* v. *Simmons Gin Co.*, 43 Fed. (2d) 327: "There is a distinction between the release or discharge of a liability to a solvent and to an insolvent taxpayer." *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393, is to the same effect.

*Meyer Jewelry Co.*, 3 B. T. A. 1319; *Porte F. Quinn*, 31 B. T. A. 142; *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95; and *Burnet* v. *Campbell Co.*, 50 Fed. (2d) 487, are distinguishable from the instant proceeding. In *Meyer Jewelry Co.* the evidence showed that the taxpayer "could not have, in fact, paid whether voluntarily relieved of payment or not." In *Porte F. Quinn* the evidence established that the cancellation of indebtedness did not make available assets to the taxpayer and that the taxpayer was insolvent. In *Dallas Transfer & Terminal Warehouse Co.* v. *Com-*

*missioner* it was shown that the taxpayer was insolvent, and conveyed away, completely disposed of, its only assets referred to therein. The Circuit Court there distinguished the *Kirby* case by stating that in the *Kirby* case the taxpayer had greater "clear" or net assets than it had before the discharge of the obligations, whereas in the *Dallas* case, having thus parted with such assets, it did not. In *Burnet* v. *Campbell Co.* it appeared that the taxpayer was in financial distress in that its creditors, all of them so far as the reports show, agreed to compromise their claims against the taxpayer and that the taxpayer was probably insolvent. It may be added that there the taxpayer probably also had no assets left after the composition.

It may be further added that *Meyer Jewelry Co., supra*, and *Burnet* v. *Campbell Co., supra*, were decided prior to the Supreme Court decisions in the *Kirby* case and the *American Chicle Co.* case, which cases of the Supreme Court are therein expressly distinguished by the Supreme Court from *Bowers* v. *Kerbaugh Empire Co.*, 271 U. S. 170, relied upon by the Circuit Court in the *Campbell Co.* case. In the *Campbell Co.* case the Circuit Court also relied upon *Meyer Jewelry Co.*, which is distinguishable from the instant proceeding, as hereinabove pointed out. In view of the decision of the Supreme Court in the *Kirby* and *American Chicle Co.* cases, the doctrine of *Meyer Jewelry Co.* and *Burnet* v. *Campbell Co.* should in any event be limited to the peculiar facts and circumstances there presented.

*Eastside Manufacturing Co.*, 18 B. T. A. 461; *Progress Paper Co.*, 20 B. T. A. 234; *E. B. Higley & Co.*, 25 B. T. A. 127; and *Towers & Sullivan Manufacturing Co.*, 25 B. T. A. 922, are all distinguishable from the instant proceeding upon the facts. However, if there is anything in any of them in conflict with the views here set forth they are, to that extent, in error and should not be adhered to.

For the foregoing reasons I concur in the result reached by the majority.

———

MATTHEWS, dissenting: The majority opinion taxes petitioners, as members of a partnership, with their proportionate shares of $16,-134.02, which amount is held to be income for 1930, and it is pointed out that the partnership was solvent in that year. But the partnership was still insolvent in 1927, when it executed one demand note to cover the entire indebtedness which had been deferred, which note did not bear interest, and the creditors further agreed that whenever the total payments made on this note, together with the principal and interest payments made on their claims prior to 1927, should equal the face value of the note the unpaid balance thereof would be canceled. The creditors were willing to discontinue charging inter-

est and to revise the agreement which they had made with the partnership in 1923 in order to assist the partnership in "working out of its difficulties" and to pay the balance of the creditors' claims.

I am of the opinion that, under these circumstances, so much of the partnership indebtedness as was equal to the interest payments made from 1923 to 1926, inclusive, was forgiven by the creditors in 1927 upon condition that the partnership pay the entire principal amount of the indebtedness. It appears to me that the partnership was actually relieved in 1927 from paying an amount to its creditors which the evidence shows it could not have then paid. Clearly the parties contemplated no profit, under the terms of the 1927 agreement. Although the partnership undoubtedly received a benefit in that it was enabled to continue in business, and it made a profit during the next few years, it does not follow that the partnership derived any gain or income, within the meaning of the Constitution and the revenue acts, when the final payments were made in 1930 and the note was marked paid and returned by the creditors. *Meyer Jewelry Co.*, 3 B. T. A. 1319; *Simmons Gin Co.*, 16 B. T. A. 793; affd., 43 Fed. (2d) 327; *Porte F. Quinn*, 31 B. T. A. 142; *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95, reversing this Board's decision reported at 27 B. T. A. 651.

As was said by the Court of Appeals for the District of Columbia in *Burnet* v. *Campbell Co.*, 50 Fed. (2d) 487, affirming 15 B. T. A. 458, where it was held that the cancellation by creditors of a part of their claims against a debtor corporation which was in financial distress in order to secure payment of the balance thereof did not produce taxable income to the debtor corporation:

* * * We do not believe that the term "income" as commonly understood applies to the partial cancellation by a creditor of a debt due to him from a disabled debtor, in order that such debtor may thereby be enabled to pay the balance of the debt. "The fact that after the transaction the plaintiff's balance sheet had improved was not sufficient to constitute 'a gain derived from capital.' If anything it was a gain accruing to capital, and, as such, under the *Eisner* and *Phellis* cases, was not taxable income." *Kerbaugh-Empire Co.* v. *Bowers*, 300 Fed. 938; Aff'd. 271 U. S. 170.

In my opinion the facts of the instant case are distinguishable from those in *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393, cited in the majority opinion, where the cancellation of a part of the taxpayer's indebtedness served to reduce the cost price of goods purchased by him.

SMITH and ARUNDELL agree with this dissent.